DICKINSON WRIGHT PLLC
Cindy A. Villanueva
Arizona Bar No. 028163
Email: CVillanueva@dickinsonwright.com
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004-4568
Tel:   602-285-5000
Fax:   844-670-6009

John L. Krieger (*admitted pro hac vice*)
Nevada Bar No. 6023
Email: JKrieger@dickinsonwright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada  89169-0965
Tel:   702-550-4400
Fax:   844-670-6009

*Attorneys for Plaintiff*
*Zuffa, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Zuffa, LLC, a Nevada limited liability company,<br><br>                              Plaintiff,<br><br>v.<br><br><ufcfightpass.net>,<br><br>                              Defendant. | CASE NO. 2:20-cv-02336-JJT<br><br>**PLAINTIFF'S *EX PARTE* EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND, UPON NOTICE AND HEARING, MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff, Zuffa, LLC d/b/a Ultimate Fighting Championship® or UFC® ("Zuffa" or "Plaintiff"), hereby moves the Court for (1) an *ex parte* temporary restraining order and preliminary injunction upon notice and hearing, requiring third-party domain name registrar NameCheap, Inc. ("NameCheap") and/or VeriSign Inc., ("VeriSign") the .net registry, to place <ufcfightpass.net> domain name (the "Defendant Domain Name") on

serverHold and serverTransferProhibited[1] for the pendency of the litigation, and (2) an order requiring the registrar and/or proxy service, WhoisGuard, Inc. ("WhoisGuard") to unmask and reveal the actual identity of the registrant of the Defendant Domain Name, including all contact information provided by the registrant of the Defendant Domain Name to register <ufcfightpass.net>.

The foregoing motion is supported by the following memorandum of points and authorities, the declarations of Riche T. McKnight and John L. Krieger, the papers and pleadings on file in this action, and any oral argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court must enter an *ex parte* temporary restraining order and preliminary injunction, upon notice and hearing, directing NameCheap and/or VeriSign to remove or disable the name server information for <ufcfightpass.net> and place the domain name on serverHold and serverTransferProhibited. The registrant of the Defendant Domain Name linked <ufcfightpass.net> to a copy-cat website, which purportedly offers services identical to Zuffa's <ufcfightpass.com> website.  By mimicking Zuffa's legitimate website, the registrant of the Defendant Domain Name lures consumers into believing they are signing up for Zuffa's legitimate video subscription services, when they are not. These innocent and unsuspecting consumers provide their personal information, including credit card numbers, to the registrant of the Defendant Domain name, exposing them to potential credit card and identity theft or other forms of fraud. The Court must order a serverHold and serverTransferProhibited to protect consumers from fraud.

Additionally, so as to ensure and confirm this Court cannot exercise jurisdiction over the registration of the Defendant Domain Name, and be able to communicate directly with the registrant instead of having to rely on the registrar and/or proxy service to forward communications along to the registrant of the Defendant Domain Name, the

---

[1] "serverHold" status renders the domain name inactive. *See* https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en (last visited Nov. 17, 2020). "serverTransferProhibited" prevents the domain name from being transferred. (*Id.*)

Court must require NameCheap and/or WhoisGuard (NameCheap's privacy service utilized by the registrant of the Defendant Domain Name) to unmask and reveal the registrant's actual identity, including all contact information provided by the registrant to register the <ufcfightpass.net> domain name. The balance of hardships tips in Zuffa's favor because issuing the injunction would merely require the transfer of the registration of <ufcfightpass.net> to Zuffa and disable the name server information pending trial. In contrast, failure to issue the injunction would cause Zuffa to continue to suffer a loss of control over its goodwill and reputation, and deprive Zuffa of the opportunity to use domain names containing its trademarks. Furthermore, granting the temporary restraining order and preliminary injunction would be in the public interest because it would protect consumers against deception and confusion arising from registration of the <ufcfightpass.net> and use of UFC® and UFC FIGHT PASS® Marks (defined below) by an entity other than Zuffa.

I. **STATEMENT OF RELEVANT FACTS**

   A. **Facts Regarding Zuffa**

Zuffa is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. (*See* Declaration of Riche T. McKnight ("McKnight Decl.") ¶ 3, attached hereto as Exhibit 1.) Zuffa is engaged in the business of publicizing and promoting mixed martial arts ("MMA") competitions throughout the world under the trade names Ultimate Fighting Championship® and UFC®. (*Id.* ¶ 4, 8.)

UFC FIGHT PASS® is a trademark owned by Zuffa and registered on the Principal Register of the United States Patent and Trademark Office, including, among many others:

> **UFC FIGHT PASS:** (Reg. No. 4,685,773) Class 9 for Software application for communication devices and media players for use in accessing, streaming and viewing audiovisual and multimedia content.
>
> **UFC FIGHT PASS:** (Reg. 4,685,774) Class 38 for Streaming of audiovisual and multimedia content via television systems and global

3

computer network; video on demand transmission services; audiovisual broadcasting services over the internet; broadcasting of television programs; subscription internet broadcasting services; subscription television broadcasting services; transmission and delivery of audiovisual and multimedia content; transmission of webcasts.

**UFC FIGHT PASS:** (Reg. No. 4,748,878) Class 41 for Entertainment services, namely, provision of non-downloadable television programs and other multimedia programs via a video-on-demand service; entertainment services, namely, providing ongoing non-downloadable television and multimedia programs featuring entertainment, sports and mixed martial arts delivered by the internet; entertainment services, namely, a multimedia program series featuring entertainment, sports and mixed martial arts distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing webcasts in the field of entertainment, sports and mixed martial arts.

**UFC FIGHT PASS PRELIMS:** (Reg. No. 4,685,823) Class 38 for Streaming of audiovisual and multimedia content via television systems and global computer network; video on demand transmission services; audiovisual broadcasting services over the internet; broadcasting of television programs; subscription internet broadcasting services; subscription television broadcasting services; transmission and delivery of audiovisual and multimedia content; transmission of webcasts.

(collectively, the "UFC® and UFC FIGHT PASS® Marks"). These federal trademark registrations have not been abandoned, canceled, or revoked. (*Id.* ¶ 12.)

As early as 2014, Zuffa began offering an online video subscription service called UFC FIGHT PASS®, located at <ufcfightpass.com>. (*Id.* ¶ 11.) Through the subscription service, users have access to live UFC® events from across the world, best-in-class original programming about combat sports, and exclusive access to the world's largest MMA fight library. (*Id.*) Subscriptions can be purchased on a monthly basis for $9.99, or annually, for $95.99. (*Id.*)

Zuffa has spent millions of dollars to advertise and promote its marks in print, broadcast media, and on the Internet through the UFC® website accessible throughout the United States and around the world at <ufc.com>, among others. (*Id.* ¶¶ 9, 11.) In addition, Zuffa organizes competitions, television programs, live shows, and fan expos.

4

It maintains a worldwide network of content distribution platforms which publicize, promote, and exhibit Zuffa's MMA competitions to a worldwide audience, and it distributes digital versatile discs, digital online programming, video home systems, apparel, accessories, exercise equipment, posters, and many other goods and services. (*Id.* ¶ 13.)

Based on its use of the UFC® and UFC FIGHT PASS® Marks, Plaintiff has the exclusive right to use its marks in connection with exhibitions of MMA contests and related goods and services.

### B.  Facts Regarding <ufcfightpass.net>.

The registrant of the Defendant Domain Name registered the <ufcfightpass.net> domain name on October 10, 2020, with NameCheap, a registrar of domain names, utilizing the WhoisGuard proxy service, a free service provided by NameCheap to hide the registrant's identity.[2]  Sometime after registration, the registrant of the Defendant Domain Name linked the <ufcfightpass.net> domain name to a website nearly identical to Zuffa's <ufcfightpass.com> website. (ECF No. 1 at Ex. 8.)

A side-by-side comparison of the two websites demonstrates the registrant not only used the UFC® and UFC FIGHT PASS® Marks in the domain name, but copied Zuffa's entire home page verbatim, including its famous red UFC® logo, the three images and arrangement thereof, as well as all of the text. There is virtually no difference between the two sites, which appears to be intentionally designed to confuse consumers into believing both sites are operated and approved by Zuffa, when they are not:

---

[2] "A proxy service allows a customer to use a domain name without displaying any of the customer's information in WHOIS." https://www.icann.org/resources/pages/pp-services-2017-08-31-en (last visited Nov. 14, 2020).  In effect, a registrant utilizing a proxy services hides his true identity from the public records. NameCheap offers WhoisGuard free with domain name registrations.  *See* https://www.namecheap.com/security/whoisguard/ (last visited Nov. 16, 2020).




**Zuffa's \<ufcfightpass.com\> website**        **\<ufcfightpass.net\> website**

(ECF No. 1 at Exs. 3 & 8.)

In what can only be a further attempt to legitimize the infringing website, the registrant of the Defendant Domain Name also added a copyright designation to the footer of the website linked to the \<ufcfightpass.net\> domain name, which reads "UFC and associated designs are registered and/or owned exclusively by Zuffa, LLC. © 2020 All rights reserved." (ECF No. 1 at Ex. 8.) Furthermore, any consumer who attempts to sign up for the subscription service offered through the infringing website is, in turn, directed to various registration pages linked to other commercial sites, including \<booklts.com\>, \<vujar.com\>, and \<my-sports.club\>, which are designed to obtain personal contact and credit card information from the user in order to create an account that has no affiliation or association with Zuffa, exposing innocent consumers to credit card and identity theft, and other forms of fraud:




(ECF No. 1 at Ex. 9.)

Given the registrant's blatant unauthorized use of the UFC® and UFC FIGHT PASS® Marks, use of a nearly identical website, and links to other third party subscription services, it is apparent the registrant registered and is using <ufcfightpass.net> in bad faith, and is attempting to create an association between the <ufcfightpass.net> domain name, the associated website, and Zuffa.

## II.   LEGAL STANDARD

To prevail on an application for a temporary restraining order and/or a preliminary injunction, a moving party must demonstrate that "he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in his favor; and, that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, Nos. 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Here, Zuffa easily meets this showing because it is highly likely to be successful on the merits of its claims, it will suffer further irreparable harm in the absence of the preliminary relief requested, the balance of hardships tips sharply in its favor, and the requested preliminary relief is in the public interest.

## III.   LEGAL ARGUMENT

An *ex parte* temporary restraining order is necessary here because there is a substantial likelihood that if the registrant of the Defendant Domain Name has advance notice of this action before the domain name is placed on serverHold and serverTransferProhibited, the registrant will transfer the registration for the

<ufcfightpass.net> domain name to another registrant or to a registrar located outside of the United States who will not comply with this Court's order. Such advance notice would thwart Zuffa's efforts to stop the registrant's abusive and infringing conduct. Should the registrant transfer the domain name, Zuffa would be required to spend significant resources chasing the domain name, potentially around the world, and require multiple lawsuits to end the chase. An *ex parte* temporary restraining order to prevent transfer until the Court can hold a preliminary injunction hearing is therefore necessary.

Furthermore, the registrant of the Defendant Domain Name copied Zuffa's <ufcfightpass.com> website and linked it to the infringing <ufcfightpass.net> domain name. The intent of the registrant's scheme is clear: use a domain name and website that incorporates Zuffa's famous trademarks as a means of luring unsuspecting consumers to the Defendant Domain Name so as to have them subscribe to his/her/its and/or third party services and obtain private information, including credit card numbers, for financial gain. So long as the <ufcfightpass.net> website remains active, countless numbers of consumers face potential identity theft and fraud at the hands of the registrant of the Defendant Domain Name. The offending website must therefore be disconnected from the Defendant Domain Name via serverHold for the pendency of the litigation. Under these circumstances, *ex parte* relief is necessary. *See Hakkasan LV, LLC v. Wang*, 2013 WL 3491178 (D. Nev. July 10, 2013) (granting *ex parte* TRO against cybersquatter who linked infringing domain name to a copy-cat website).

### A.  Zuffa Is Likely to Succeed on the Merits of Its Anti-Cybersquatting Claim

The Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), ("ACPA") applies to the registration of domain names that are identical or confusingly similar to distinctive or famous marks. The ACPA provides, in pertinent part, that:

> [A] person shall be liable in a civil action by the registrant of a mark . . . if, without regard to the goods or services of the parties, that person –
>
> (i)  has a bad faith intent to profit from that mark . . .; and

    (ii)  registers, traffics in, or uses a domain name that –

      (I)  in the case of a mark that is distinctive at the time of registration of the domain name is identical or confusingly similar to that mark; [or]

      (II)  in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

15 U.S.C. § 1125(d)(1)(A). Thus, liability under the ACPA attaches if: (1) the defendant possesses a bad faith intent to profit from another's trademark and either registers, traffics in, or uses that trademark in a domain name; (2) the plaintiff's mark was distinctive or famous at the time the domain name was registered; and (3) the domain name is identical or confusingly similar to the plaintiff's trademark. (*Id.*) Zuffa is likely to succeed on the merits of its ACPA claim because each of the foregoing elements is satisfied.

    1.  *The Registrant Registered, Used, and/or Trafficked in <ufcfightpass.net> in Bad Faith.*

The registrant of the Defendant Domain Name registered the domain name with a bad faith intent to profit from the UFC® and UFC FIGHT PASS® Marks. In assessing whether a person has a "bad faith intent," the ACPA lists several factors a court may consider, including whether the name consists of defendant's trademark rights in the domain name; defendant's legal name; defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; the defendant's intent to divert consumers to a domain name that could harm the goodwill in the trademarks, and the extent to which the mark incorporated into the domain name is distinctive or famous. 15 U.S.C. § 1125(d)(1)(B).

"[A court is] not limited to considering just the listed factors when making [its] determination of whether the statutory criterion has been met. The factors are, instead, expressly described as indicia that 'may' be considered along with other facts." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 (2d Cir. 2000). The unique

9

circumstances of a case serve as the "most important" basis for finding bad faith. *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009).

Here, the facts support a finding of bad faith intent:

- ***Trademark rights in the domain name and use of marks prior to domain registration***. The registrant has no apparent trademark rights in <ufcfightpass.net>. To the contrary, the registrant knows he/she/it has no trademark rights in the domain name and is using Zuffa's reputation and goodwill to divert consumers looking for Zuffa's <ufcfightpass.com> website to the infringing <ufcfightpass.net> domain name and associated website.

- ***Defendant's legal name(s)***. Upon information and belief, the <ufcfightpass.net> domain name does not contain the registrant's legal name. Moreover, the WHOIS[3] registration records for <ufcfightpass.net> does not identify "Zuffa" or "UFC" as the registrant's legal name. (ECF No. 1, at Ex. 1. (WHOIS registration record)).

- ***Bona fide noncommercial or fair use***. The registrant of the Defendant Domain Name has made no bona fide noncommercial or fair use of <ufcfightpass.net>. The registrant's use of <ufcfightpass.net> is unquestionably a commercial use because the website includes links to other third party subscription services. The registrant of the Defendant Domain Name is using <ufcfightpass.net> website to divert consumers for his/her/its own gain and is exposing consumers to credit card and identity theft. This is not fair use.

- ***Intent to divert for commercial gain***. The registrant of the Defendant Domain Name clearly intended to divert consumers by registering <ufcfightpass.net> which is a domain name confusingly similar to Zuffa's legitimate website located at

---

[3] The WHOIS registration record provides contact information for the person responsible for the domain name. This information is managed by domain name registrars and registries who are accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). https://whois.icann.org/en/about-whois (last visited Nov. 14, 2020).

10

<ufcfightpass.com> -- indeed the Defendant Domain Name *incorporates* Zuffa's famous and/or distinctive trademarks. Upon information and belief, the registrant is generating income from unsuspecting consumers who sign up for the purported online video subscription service, incorrectly believing they are signing up for Zuffa's legitimate online video subscription service. Moreover, it is highly likely that the registrant is using the purported subscription service as a front to illegally obtain consumers' confidential personal information, including credit card numbers, which it can either use or sell for additional financial gain. (ECF No. 1 at Ex. 9.)

- ***Extent of fame or distinctiveness of the trademark.*** The UFC® and UFC FIGHT PASS® Marks were famous and/or distinctive before the registrant registered the <ufcfightpass.net> domain name. *See, infra* Subsection 2.

Accordingly, several of the factors weigh heavily in favor of a finding that the registrant of the Defendant Domain Name had a bad faith intent to profit from registration and use of <ufcfightpass.net>. Thus, Zuffa satisfies the first element.

### 2. *The UFC® and UFC FIGHT PASS® Marks Are Famous and/or Inherently Distinctive.*

The UFC® and UFC FIGHT PASS® Marks are famous. A trademark is famous if it is "widely recognized by the general consuming public…as a designation of source of the goods or services of the owners mark." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is famous, the court may consider all relevant factors, including the (1) duration, extent, and geographic reach of advertising and publicity of the mark; (2) amount, volume, and geographic extent of sales under the mark; and (3) extent of actual recognition of the mark. (*Id.*)

Here, Zuffa and its predecessors have used the UFC® trademark for over twenty-five (25) years, and the UFC FIGHT PASS® trademark since 2014.  (McKnight Decl. ¶¶ 9, 11, 13.)  Over the years, Zuffa has spent millions of dollars advertising and promoting the UFC® and UFC FIGHT PASS® Marks in print, broadcast media, and on the Internet. (*Id.*)  Zuffa produces more than 40 UFC® live events annually and is the largest pay-per-

view event provider in the world. (*Id.* ¶ 6.) These events are broadcasted in over 171 countries and territories to approximately one billion households worldwide, in 45 different languages. (*Id.*)  Zuffa's significant efforts have been successful:  Zuffa enjoys millions of fans across the world and have sold out some of the biggest arenas and stadiums across the globe.  (*Id.* ¶ 5, 10.) Indeed, at least one Court has found the UFC® Marks to be famous. *See, e.g.*, *Zuffa, LLC v. Texas Int'l Prop. Assocs.*, Case No. 2:08-cv-01663-RCJ-RJJ, ECF No. 31 at ¶ 21. (D. Nev. Jan. 22, 2009).

In addition to its worldwide fame, the UFC® and UFC FIGHT PASS® Marks are inherently distinctive.  Registration of the UFC® and UFC FIGHT PASS® Marks is evidence that the marks are distinctive. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009) (registration of a mark "supports the distinctiveness of that mark, because the [Patent and Trademark Office] should not otherwise give it protection."); *see also* 15 U.S.C. § 1115(a) (registration is "prima facie evidence of validity of the registered mark"). Moreover, the UFC® and UFC FIGHT PASS® Marks are distinctive because they are suggestive. *Lahoti*, 586 F.3d at 1197. A suggestive mark requires a "mental leap" to conclude the nature of the product. *Id*. at 1198.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (explaining suggestive marks deemed inherently distinctive because "their intrinsic nature serves to identify a particular source of product"); *see also Playtex Prods, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 163-64 (2d Cir. 2004) (finding "Wet Ones" suggestive as to moistened toilettes). Here, the UFC® and UFC FIGHT PASS® Marks require the mental leap to determine the nature of the product and services making the marks suggestive, and thus inherently distinctive.

        3.    *The Defendant Domain Name Is Confusingly Similar to the UFC® and UFC FIGHT PASS® Marks.*

The <ufcfightpass.com> domain name contains the entirety of the UFC® and UFC FIGHT PASS® Marks. There can be no genuine dispute that the domain name here is identical or confusingly similar to the UFC® and UFC FIGHT PASS® Marks. *ViaView, Inc. v. Blue Mist Media*, No. 2:12-cv-1657-GMN-GWF, 2012 WL 6007204, at *3 (D.

Nev. Nov. 30, 2012) (domain name is identical or confusingly similar when it incorporates the entirety of plaintiff's trademark). *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 Fed. App'x 115, 119 (9th Cir. 2018) (domain name is confusingly similar where domain name is identical to mark). Zuffa therefore satisfies the third element and is likely to succeed on its cybersquatting claim.

### B. Zuffa Will Be Irreparably Injured if <ufcfightpass.net> Is Not Immediately Disabled for the Pendency of the Litigation.

Zuffa will suffer irreparable harm if this Court does not issue an order requiring NameCheap and/or VeriSign to disable the name server information, rendering the website inoperable, and placing the <ufcfightpass.net> domain name on serverHold and serverTransferProhibited for the pendency of this litigation. The loss of control over business and goodwill constitutes irreparable harm. *Adidas Am., Inc. v. Sketchers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018).

The very fact that the registrant has the ability to divert traffic away from Zuffa's website is sufficient irreparable harm to warrant injunctive relief. Moreover, if the temporary restraining order is not issued, the registrant could sell and/or transfer the domain name to other persons. If the registrant transferred the domain name to another registrant(s), Zuffa would be required to file additional lawsuits and keep chasing the domain name as it was passed among subsequent registrants. The issuance of a temporary restraining order and a preliminary injunction will put a stop to the chase and permit Zuffa the opportunity to enforce its trademark rights without the need for multiple, successive lawsuits.

There can be no doubt that the registrant of the Defendant Domain Name has the ability to profit from the UFC® and UFC FIGHT PASS® Marks, either through subscriptions by unsuspecting consumers, or through having access to consumers' confidential information, including credit card numbers. Moreover, consumers who either subscribe to the registrant's purported video service or provide their credit card information to the registrant will believe they are providing information and subscribing

to Zuffa's legitimate video service. Once these consumers do not obtain access to the videos, or have their credit card information compromised, they will wrongly believe that Zuffa is responsible for the same.

Other courts in this Circuit have previously granted injunctions ordering domains to be placed on "hold and lock" (also known as serverHold and serverTransferProhibited), which prohibits the domain name from transferred and disables the websites rendering them inaccessible for the pendency of the litigation. *See, e.g., LV Gaming Ventures, LLC v. M Resort Phuket*, No. 2:11-cv-1552-LDG-VCF, ECF No. 11 (D. Nev. Oct. 25, 2011) (granting injunction and disabling website for pendency of litigation); *Switch Commc'n Group, LLC v. Banks*, 2011 WL 5854610 (D. Nev. Nov. 17, 2011) (granting injunction and ordering website disabled for the pendency of the litigation); *Hakkasan LV, LLC*, 2013 WL 3491178 (granting injunction and ordering website disabled); *Hakkasan LV, LLC v. VIP Unlimited, LLC*, No. 2:13-cv-1999-JCM-NJK, 2013 WL 5947308 (D. Nev. Nov. 1, 2013) (granting injunction and ordering website disabled); *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, No. 2:14-cv-00424-JCM-NJK, 2014 WL 1267764 (D. Nev. Dec. 19, 2014) (granting injunction and ordering website disabled). In addition to the harm to consumers caused by the confusingly similar Defendant Domain Name, Zuffa will suffer irreparable injury to its reputation and goodwill as long as the <ufcfightpass.net> website remains accessible.

### C.     The Balance of Hardships Tips in Favor of Zuffa.

Here, the balance of hardships clearly weighs in Zuffa's favor. Zuffa seeks only to have the <ufcfightpass.net> domain name placed on serverHold and serverTransferProhibited for the pendency of the litigation. The registrant's registration and use of the <ufcfightpass.net> domain name and associated website clearly serve no legal purpose. *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 Fed. App'x at 120 (no equities in allowing defendant to continue illegal activities). Additionally, a temporary restraining order and a preliminary injunction ordering the

domain name registrar or registry to place <ufcfightpass.net> on serverHold and serverTransferProhibited confers no hardship to the registrant. *See Stephens Media LLC v. Human Ingenuity Int'l Corp.*, No. 2:09-cv-00434-RLH-PAL, 2009 WL 10710106, at *4 (D. Nev. Mar. 27, 2009) (finding hardships weighed in plaintiff's favor given the risk that potential and existing customers will be confused by infringing domain name). Conversely, the damage to Zuffa's reputation, goodwill, and pecuniary interest is substantial, as explained above.

### D. The Public Interest Favors Granting Injunctive Relief.

Trademark law is intended to protect legitimate businesses and consumers from deceit. *Two Pesos, Inc.*, 505 U.S. at 782 n.15 (Stevens, J. concurring); *Minnesota Min. & Mfg. Co. v. Taylor*, 21 F. Supp. 2d 1003, 1005 (D. Minn. 1998) (cybersquatting "constitutes a misuse of the Internet" and "[t]here is a strong public interest in stopping such misuses"). Avoidance of consumer confusion is itself a public interest. *AECOM Energy & Constr., Inc.*, 748 Fed. App'x at 120 (enjoining use of confusingly similar trademarks is in the public interest). Moreover, the "public has a strong interest in receiving accurate information." *CJ Prods. LLC v. Snuggly Plushez, LLC,* 809 F. Supp. 2d 127, 149 (E.D.N.Y. 2011). Finally, the public interest is clearly served by stopping the potential for credit card and/or identity theft as a result of the registrant's unlawful activities. Thus, the public interest is served by preventing consumer confusion from the registrant's unlawful trademark use and the online deception created by the use of <ufcfightpass.net>.

### E. The Court Should Require Only Nominal Security.

In the event that the Court requires that a bond or other security be posted, Zuffa requests that the Court set an amount that is no greater than $100 in light of the fact that domain name registrations typically cost less than $10 per domain name. The registrant would not suffer from being forced to maintain the registration that he or she currently has on <ufcfightpass.net> for the pendency of this litigation.

### F. Order Requiring Registrar to Unmask Identity of Registrant

It is critical Zuffa obtains the registrant's identity immediately so as to ensure and confirm this Court cannot exercise jurisdiction over the registrant of the Defendant Domain Name, and be able to communicate directly with the registrant instead of having to rely on the registrar and/or proxy service to forward communications along to the registrant of the Defendant Domain Name.

As set out in Zuffa's motion to proceed *in rem* filed concurrently herewith, Zuffa currently has no means of ascertaining the identity of the registrant of the Defendant Domain Name because NameCheap and/or WhoisGuard is/are refusing to disclose the identity without a court order. (Krieger Decl. ¶¶ 8-10.) Registries, like VeriSign, and registrars, like NameCheap, are the gate keepers of domain name registrations.[4] In the domain name system, registries and registrars agree that they will honor all court orders as part of their registry or registrar agreements with the Internet Corporation for Assigned Names and Numbers ("ICANN") so as to facilitate a streamlined dispute resolution system.[5]  Moreover, because registrars and registries are immune from liability where their conduct is limited to mere registration of a domain name, courts disfavor naming them as parties.  *See* 15 U.S.C. § 1114(2)(d)(iii); *see also Lockheed v. Network Sols., Inc.,*

---

[4] A domain name registry is responsible for maintaining the registry database and domain name registration data.  The registrar is an ICANN-accredited company that sells domain names to domain name registrants.  https://whois.icann.org/en/domain-name-registration-process (last visited Nov. 16, 2020).  *See also Petroliam Nasional Berhad v. GoDaddy.com,* 897 F. Supp. 2d 856, 859 (N.D. Cal. Jan. 3, 2012).

[5] VeriSign, NameCheap, and WhoisGuard are required to comply with this Court's orders pursuant to Federal Rule of Civil Procedure 65, as well as the registry and registrar agreements they have with ICANN, respectively.  *See* https://www.icann.org/resources/pages/policy-2012-02-25-en (last visited Oct. 22, 2020). Rule 65 allows the Court to issue an injunction to non-parties who are "in active concert or participation" with the defendant.  Fed. R. Civ. P. 65(d)(2).  Because the registrar and registry are in control of the property that is subject of this suit, and thus in active participation with the registrant, they are additionally bound by any injunction of this Court.

194 F.3d 980, 985 (9th Cir. 1999) (finding in defendant's favor where defendant acted only in its capacity as domain name registrar).[6] In fact, Congress recognized the unique structure of the domain name system and expressly required registries and registrars to comply with court orders in cybersquatting cases obviating the need for them to become named parties. *See* 15 U.S.C. § 1114(2)(D) (providing a domain name registrar may transfer, suspend, or otherwise modify a domain name during the pendency of litigation with a court order).

An order requiring the unmasking of the registrant will facilitate better communication between Zuffa and the registrant. NameCheap and/or WhoisGuard proxy service is set up such a way that all communication must flow through it. (Exhibit 2 ¶ 3.) A true and accurate copy of the WhoisGuard terms of service is attached as Exhibit 2. NameCheap and/or WhoisGuard expressly stated they will reveal the registrant's identity and allow the dispute process to continue without interference if and when the Court issues such an order. (Krieger Decl. ¶¶ 8-10; *see also* https://www.namecheap.com/legal/general/court-order-and-subpoena-policy/) (last visited Nov. 16, 2020).

Moreover, an order directing NameCheap and/or WhoisGuard to unmask the registrant, including disclosure of all contact information provided by the registrant to register the <ufcfightpass.net> domain name, will facilitate a just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1. *See. e.g., Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (court has inherent authority to issue provisional remedies).

## IV. CONCLUSION

Based on the foregoing points and authorities, Zuffa requests that the Court grant its application for an *ex parte* temporary restraining order on the terms set forth in the

---

[6] Absent bad faith, there is rarely any case or controversy between the plaintiff and domain name registrar or registry. *Lockheed v. Network Sols., Inc.*, 985 F. Supp. 949, 967 (C.D. Cal 1997).

proposed order and grant a preliminary injunction, after notice and hearing, pending adjudication on the merits.

| | |
|---|---|
| Dated December 3, 2020 | DICKINSON WRIGHT PLLC |
| | /s/ Cindy A. Villanueva |
| | Cindy A. Villanueva<br>Arizona Bar No. 028163<br>Email: CVillanueva@dickinsonwright.com<br>1850 North Central Avenue, Suite 1400<br>Phoenix, AZ 85004-4568 |
| | John L. Krieger (*admitted pro hac vice*)<br>Email:  JKrieger@dickinsonwright.com<br>3883 Howard Hughes Parkway, Suite 800<br>Las Vegas, Nevada  89169-0965<br>Tel:     702-550-4400 |
| | *Attorneys for Plaintiff*<br>*Zuffa, LLC* |

4850-0691-0674 v4 [66108-20021]